# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| MARPAC CONSTRUCTION, LLC , | No. 82200-4-I |
| Appellant, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| DEPARTMENT OF LABOR AND INDUSTRIES OF THE STATE OF WASHINGTON, | |
| Respondent. | |

APPELWICK, J. — Marpac appeals the determination that it committed three serious willful WISHA violations pertaining to safe crane operation near energized power lines. Marpac's actions show an indifference to safety that satisfies the standard for a willful violation. We affirm.

FACTS

Marpac Construction LLC was the general contractor on an apartment complex construction project on Oregon Street and 42nd Avenue in West Seattle. The worksite had high voltage power lines running along Oregon Street, across an alley, and on 42nd Avenue. Seattle City Light had flagged the power lines along 42nd Street on the east side of the project with a 10 foot offset.[1] None of the other power lines were flagged. Marpac's superintendent, Todd Weeks, never called Seattle City Light to check the voltage of the lines. He assumed they were between

---

[1] The flags were placed 10 feet away from the high voltage line.

Citations and pin cites are based on the Westlaw online version of the cited material.

26 kV (kilovolts) and 50 kV based on their connection to the lines flagged by Seattle City Light. Initially, Marpac had planned to bury the power lines on the west side of the project. But, in September 2016, the lines remained above ground.

Marpac had subcontracted with Spartan Concrete Inc. to work on the building's structural foundation. It started with the basement where the work was safely performed outside the proximity of the power lines. When construction approached street level, the owner of Spartan expressed his concerns about working around the power lines. According to Spartan's owner, Weeks told him that Marpac was working on mitigation of the power line hazard and Spartan was to continue working.

Crane operator Denny Yuckert was working with Spartan to erect concrete columns. Yuckert used a crane to lift heavy concrete forms around vertical rebar so Spartan workers could pour concrete into the forms. After the concrete had set, Yuckert removed the forms and repeated the process for the next column.

On September 26, 2016, a Spartan cement truck arrived while Weeks, Yuckert, and foreman Andrew Williams were on break. The truck could not park to pour a column because the crane and concrete forms were in the way. Weeks and Williams told Yuckert to move the panels and tear down the crane so the truck could park.

Yuckert returned to the jobsite and found Spartan employees Juan Estrada and Mario Pacheco taking their break near the crane. The men had a brief conversation about moving the panels. Yuckert was aware of the energized power lines nearby but he did not "really take it into consideration." The lines were not

2

flagged and there was no designated spotter for the lift. Estrada and Pacheco chained the panels to the ball of the crane. Yuckert was in the crane and began moving the panels. Estrada signaled to Yuckert to pick up the panel. Estrada continued to signal Yuckert as he maneuvered the panels. Yuckert lowered the panels as directed. Estrada and Pacheco grabbed the chains to disconnect them from the forms. Yuckert heard "a big pop," saw smoke, and saw Estrada being blown backward. Yuckert realized that the crane's line had contacted the power lines, electrocuting Estrada and Pacheco. Both men suffered serious injuries.

The Department of Labor and Industries (DLI) responded to the scene and conducted an inspection and investigation. Marpac received citations for six violations. Three citations were for serious violations and three were willful serious violations. DLI assessed a total penalty of $133,500. The willful serious violations amounted to $126,000 of the penalties.

Marpac appealed the citation to the Board of Industrial Insurance Appeals (Board). The Board upheld the citations, including the three willful determinations, because "Marpac management substituted its own judgment for and exhibited indifference to the safety requirements." Specifically,

> Marpac managers knew the power lines bordering the construction site were energized, high-power lines. They knew the lines along the west alley were supposed to be buried. When this did not occur, Marpac managers continued to instruct its employees to work near and under the power lines without instituting other safety measures. Marpac failed to learn the voltage of the power lines and erroneously established a 15-foot distance limitation from the lines. This limitation should have been 20 feet. Marpac knew spotters were not being used for all lifts being conducted near the power lines. The repetition, frequency and seriousness of Marpac's failures to comply with safety standards were the result of a culture of indifference created largely by Superintendent Weeks. Mr. Weeks routinely substituted his judgment for safety rules.

3

Marpac filed a petition for review of the Board decision. Marpac challenged only the three "willful" classifications, conceding that the six violations were "serious." The Board denied review and adopted the proposed decision as its final decision.

Marpac filed an appeal of the Board's decision in King County Superior Court. The trial court affirmed the Board's decision and entered a judgment against Marpac for the amount of the fines. Marpac appeals.

DISCUSSION

In a Washington Industrial Safety and Health Act of 1973 (WISHA), chapter 49.17 RCW, appeal, we review a decision by the Board based on the record before the agency. Shimmick Constr. Co, Inc. v. Dept. of Labor & Indus., 12 Wn. App. 2d 770, 778, 460 P.3d 192 (2020). The Board's findings of fact are conclusive if they are supported by substantial evidence, which is evidence "in sufficient quantity to persuade a fair-minded person of the truth of the declared premise." Frank Coluccio Constr. Co. v. Dept. of Labor & Indus., 181 Wn. App. 25, 35, 329 P.3d 91 (2014). We then determine whether the findings of fact support the conclusions of law. Id. We construe evidence in the light most favorable to the party that prevailed in the administrative proceedings. Shimmick, 12 Wn. App. 2d at 778.

We interpret agency regulations as if they are statutes and review questions of law de novo. Id. Substantial weight is given to DLI's interpretation of WISHA. Id. WISHA statutes and regulations are construed liberally "in order to achieve their purpose of providing safe working conditions for every worker in Washington." Erection Co. v. Dep't of Labor & Indus., 160 Wn. App. 194, 202, 248 P.3d 1085 (2011). If Washington law does not provide controlling case law, we may look to

4

federal decisions interpreting WISHA's federal analogue, the Occupational Safety and Health Act of 1970 (OSHA), 29 U.S.C. §§ 651-78. Shimmick, 12 Wn. App. 2d at 778.

WISHA requires employers to "furnish to each of his or her employees a place of employment free from recognized hazards that are causing or likely to cause serious injuries or death." RCW 49.17.060(1). Under WISHA, a serious violation "shall be deemed to exist in a workplace if there is a substantial probability that death or serious physical harm could result from a condition" in the workplace unless the employer did not and could not know of the presence of the violation with the exercise of reasonable diligence. RCW 49.17.180(7). Violations may also be deemed "willful." RCW 49.17.180(1). A willful violation involves a voluntary action, done either with an intentional disregard of or plain indifference to the requirements of the statute. Elder Demolition, Inc. v. Dep't of Labor & Indus., 149 Wn. App. 799, 807, 207 P.3d 453 (2009). Neither malicious motives nor specific intent are necessary for a willful violation. Id. at 808. Rather, "a plain indifference to safety requirements is sufficient by itself to establish a willful violation." Id. An act may be willful if the employer shows an "'indifference'" to the rules, with a state of mind such that "'if he were informed of the rule, he would not care.'" Id. (internal quotation marks omitted) (quoting Brock v. Morello Bros. Constr., Inc., 809 F.2d 161, 164 (1st Cir. 1987)).

DLI bears the initial burden of proving a WISHA violation. Frank Coluccio, 181 Wn. App. at 36. Marpac concedes that its violations were serious, challenging only the willful classifications of three of the six violations.

I. Power Line Safety

A. WAC 296-155-53408(2)(b)

Operation of a crane or derrick requires precautions to prevent encroachment when any part of the crane, load line, or load could come within 20 feet of a power line up to 350 kV. WAC 296-155-53408(1)(a), (2)(b). The regulation includes three options for encroachment precautions:

> (i) Option (1) - Deenergize and ground. Confirm from the utility owner/operator that the power line has been deenergized and visibly grounded at the worksite.
>
> (ii) Option (2) - Clearance. Ensure that no part of the crane/derrick, load line or load (including rigging and lifting accessories), gets closer than 20 feet of a power line that is up to 350 kV or closer than 50 feet of a power line that exceeds 350 kV by implementing the measures specified in (b) of this subsection.
>
> (iii) Option (3) - Table 4 clearance.
>
> (A) Determine the line's voltage and the minimum approach distance permitted under Table 4 of this section.
>
> (B) Determine if any part of the crane/derrick, load line or load (including rigging and lifting accessories), could get closer than the minimum approach distance of the power line permitted under Table 4 of this section. If so, then you must follow the requirements in (b) of this subsection to ensure that no part of the crane/derrick, load line, or load (including rigging and lifting accessories), gets closer to the line than the minimum approach distance.

WAC 296-155-53408(1)(a) (boldface omitted). Options 2 and 3 have additional requirements including planning meetings to review locations of the power lines and steps to prevent encroachment and electrocution, and elevated warning lines with high visibility markings at 20 feet from the power line or use of a designated spotter. WAC 296-155-53408(2)(b). In order to use Option 3, Marpac was required to determine the voltage of the power line. WAC 296-155-

53408(1)(a)(iii)(A). The utility owner/operator must provide the voltage information. WAC 296-155-53408(2)(c).

Marpac contends its violation of WAC 296-155-53408(2)(b) was not willful because it "had a good faith belief that it complied with the cited regulations." Among its cited reasons for this good faith belief, Marpac notes that it observed a 15 foot zone under the power lines that exceeded the 10 foot minimum distance for power lines under 50 kVs required by WAC 296-155-53408 Table 4.

But, Marpac did not contact the utility to determine the voltage of the power lines at the site. Weeks assumed the lines were between 26 kV and 50 kV but never confirmed his assumption with Seattle City Light. As a result, Marpac could not use the precautions established in Option 3 that would have allowed a 10 foot safety zone. WAC 296-155-53408(1)(a)(iii)(A), Table 4. Because the voltage was unconfirmed, Marpac needed to observe the most protective precaution as set out in Option 2. WAC 296-155-53408(1)(a)(ii). Failure to either determine the voltage and minimum safe distance in Option 3 or default to the more protective Option 2 showed a "plain indifference" to the requirements that amounts to a willful violation. See 149 Wn. App. at 807.

Additionally, Marpac knew that the construction was encroaching on the power lines but directed work to continue. The owner of the subcontractor raised this concern with Weeks. Weeks indicated that Marpac was working to mitigate the hazard and to continue working in the meantime. But, people continued to work under the energized power lines for several weeks leading up to the accident. This included operation of the crane with a boom that could extend 52 feet under

7

power lines 36.75 feet off the ground.  Considering the evidence in the light most favorable to DLI, Marpac's weeks of work under the power lines without proper mitigation shows the level of indifference to safety to support the willful designation.

B.  WAC 296-155-53408(2)(d)(i)

Marpac was cited with a serious willful violation because it "did not prohibit the use of extendable forklift and crane below energized power lines."  Unless an exception applies, "[n]o part of the crane/derrick, load line or load (including rigging and lifting accessories) is allowed below a power line unless you have confirmed that the utility owner/operator has deenergized and (at the worksite) visibly grounded the power line."  WAC 296-155-53408(2)(d)(i).  None of the exceptions applied to this construction site.[2]  In addition to the operations of the crane, Marpac also used a forklift modified with a boom attachment under the power lines.  A

---

[2] WAC 296-155-53408(2)(d)(ii) states,

Exceptions. (d)(i) of this subsection is inapplicable where you demonstrate that one of the following applies:

(A) The work is covered by chapter 296-45 WAC.

(B) For cranes/derricks with nonextensible booms: The uppermost part of the crane/derrick, with the boom at true vertical, would be more than 20 feet below the plane of a power line that is up to 350 kV, 50 feet below the plane of a power line that exceeds 350 kV or more than the Table 4 minimum clearance distance below the plane of the power line.

(C) For cranes with articulating or extensible booms: The uppermost part of the crane, with the boom in the fully extended position, at true vertical, would be more than twenty feet below the plane of a power line that is up to 350 kV, fifty feet below the plane of a power line that exceeds 350 kV or more than the Table 4 minimum clearance distance below the plane of the power line.

(D) Compliance with (d)(i) of this subsection is infeasible and meets the requirements of subsection (4) of this section.

forklift with this attachment can be used as a crane and should not be operated under power lines.

Weeks admitted that the modified forklift worked under the power lines. This was a violation of WAC 296-155-53408(2)(d)(i). Marpac argues that it was unaware that adding an attachment to a forklift would subject it to crane power line regulations but took numerous steps to ensure that the forklift did not come within 10 feet of the power lines. But, Marpac's lack of knowledge supports rather than refutes the willfulness designation. Georgia Elec. Co. v. Marshall, 595 F.2d 309, 320 (5th Cir. 1979) ("It is precisely because the Company made no effort whatsoever to make anyone with supervisory authority at the job site aware of the OSHA regulations that the Company can be said to have acted with plain indifference and thereby acted willfully."). Marpac's ignorance of the important safety rules when working equipment capable of encroaching on energized power lines shows an indifference to safety that supports the finding of a willful violation.

II.  Lift Director—WAC 296-155-53401

DLI also cited Marpac with a serious willful violation related to the lack of a designated qualified lift director. WAC 296-155-53401(5)(c) requires the site supervisor to ensure that a qualified person is designated as the lift director. The lift director "[d]irectly oversees the work being performed by a crane and the associated rigging crew." WAC 296-155-53401(1). Marpac claims this violation was not willful because it assigned Williams to perform the duties of the lift director.

The record contradicts Marpac's claim. Williams adamantly denied that he was lift director. Williams said he was the site foreman, "and [his] paycheck reflects

9

that." During the investigation, Williams told Gary Orsborn, "'They're going to try to stick me on that, but I keep telling them no. I don't understand the rules well enough. And they promised me they'd get me more training.'" Williams said he had "'[n]ot really'" had any training to be lift director.

Based on this evidence, Williams was not a qualified lift director and had informed Marpac of his lack of qualification and lack of interest in serving as lift director. Marpac showed an indifference to the safety requirements by either failing to appoint a lift director or appointing an unqualified lift director. Either interpretation of the testimony supports the willfulness of the violation.

We affirm.

_Appelwick, J._

WE CONCUR: